Carr, J.
In adjudging that the evidence was sufficient in law to maintain the defendant’s plea of non assumpsit, the court, no doubt, went upon the ground, that the entry and mowing and carrying away the hay crop, was an eviction as to the meadow, and that an eviction of part of the rented premises by the landlord, was an extinguishment of the whole rent. I was doubtful at first, whether, on the issue, this evidence as to taking away the meadow crop, was admissible; but examination has removed that doubt. I find it laid down in many books, that, in debt for rent, the defendant may, under the plea of nil debet give in evidence an entry and expulsion by the landlord ; and the doctrine, I think, applies a fortiori here.
Is this evidence such as would have authorized a jury to find an eviction? The principal enjoyment and possession of meadow, consists in the taking and using the hay: the man who does this, is to every rational purpose, the possessor. Therefore, the wrongful entry of the landlord into the moadoiv, and his forcible cutting and carrying away of the hay, might, I think, well have authorized a jury to find au eviction as to the meadow land; and the court on the demurrer must do the same.
But does this eviction of part suspend the whole rent ? In the old books of the highest authority, this is explicitly laid down as settled law. Roll, Coke, Bacon, and many others, are express to this point; and they give, what seems to me, a sound reason for it. Thus Gilbert in his law of evidence, p. 283. says, “ If the lessor enter into part, the whole rent is suspended, for the lessor cannot apportion it *486 by an act of his own; for, if the party himself, by his own wrong, doth hinder himself from the benefit of his own in-tire contract, the jury ought not to decide it in his favour, for possibly the lessee would not have contracted for one part without the other. If a stranger evict the lessee of part of the land, the rent must be apportioned, for though part be taken away, since also some part remains, there is a part of the consideration money remaining due to the lessor, for otherwise the act of the law, in the stranger’s recovery, would do wrong to the lessor.” In 6 Bac. Abr. Rent. M. p. 49. it is said, “ Where the lessor takes a lease of part of the land, or enters wrongfully into part, there are variety of opinions whether the intire rent shall not be suspended, during the continuance of such lease, or tortious entry; and in the last case, it seems to be the better opinion, and the settled law at this day, that the tenant is discharged from the payment of the whole rent, till he be restored to the whole possession, that no man may be encouraged to injure ■or disturb his tenant in his possession, whom by the policy •of the feudal law, he is bound to protect.” These are the old books: but Starkie, a late writer of high authority, states the law in the same way: speaking of the lessee’s defence under the plea of nil débet, he says—“ So the lessee may shew an entry, or an expulsion from the premises by the lessor, or any suspension of rent by him, under this issue; for since the lessor by his own wrongful act deprives the party of the benefit of the intire contract, no apportionment can be made in his favour.” Stark. Law Ev. part 4. vol. 2. p. 465. Chancellor Kent too, in his Commentaries (vol. 3. p. 376.) says, “ If the landlord enters upon part of the demised premises by wrong, the better opinion is, that it suspends the payment of the whole rent, until the tenant be restored to the whole possession, for the lessor ought not to be able so to apportion his own wrong, as to oblige the tenant to pay any thing for the residue.” In Cibell v. Hills, 18 Vin. Abr. Rent. I. a. pi. 2. p. 513. citing Leo. 110. the court held the continuing in possession of the landlord, was *487 not material, for if he does any thing amounting to an entry, though he depart presently, yet the possession is in him, sufficient to suspend the rent, and he shall be said extra tenere the defendant” &£C. In Roll’s Abr. 940. it is said, “ If a man lease a rectory, for years, reserving rent, and upon part of the glebe, there is a sheep cot, and the lessor enter and pull it down, and the lessee reenter, and then the rent is in arrear; the rent is suspended, notwithstanding the reentry of the lessee, for part of the profits of the thing leased is taken from the lessee, to wit, his house, and that by the act of the lessor.” So, in the case before us, part of the profits of the thing leased, the hay crop, was taken from the lessee, and that by the act of the lessor. These authorities prove clearly to me, that there was such an expulsion here, as justified the court in its judgement.
It was contended at the bar, that this, though admitted to be the ancient law, has been changed by the modern english decisions; and that the rule now established there, is, that if the landlord evict the tenant from parcel of the premises, the tenant, if he quit the residue, is discharged from the whole rent; but if he continue in possession of the remainder, he is liable pro tanto: and for this Stark. Law Ev. part 4. vol. 3. p. 1520. and the cases there cited, are referred to. Starkie certainly lays down the rule, as stated, and cites in support of it Smith v. Raleigh, 3 Campb. 513. and Stokes v. Cooper, Id. 514. in a note. The first of these cases was assumpsit for use and occupation of a house and garden; plea, the general issue; it appeared, that after the defendant had agreed to take the premises, at an intire rent, and possession had been delivered to him, the plaintiff railed off a part of the garden, and built a privy upon it, for the use of a number of his other tenants, and the defendant thereupon returned the keys to him : lord Ellenborough ruled, that this amounted to an eviction from part of the demised premises; which, the taking being single, and the rent intire, he considered a complete answer to the action; and he nonsuited the plaintiff. Surely, this case does not *488 furnish authority for the position, that the tenant continuing to hold the part from which he is not evicted, is liable pro tanto; for no such point was before the court, nor did the judge say a word about it: be simply held, that, in the case before him, the tenant was discharged. In his note to this case, the reporter says, “ This case was recognized by Dallas, J. in Stokes v. Cooper, in which the rule was laid down, that after eviction from part, the landlord cannot recover upon the original contract, and the tenant by giving up possession of the residue, is intirely discharged; but that if the tenant, after the eviction, continues in possession of the residue, he may be liable upon a quantum meruit.” This is a brief and loose note of a decision made on the circuit, and gives us a mere skeleton of the case. I take it that the case before the court was, like that before lord Ellenborough, and that the point adjudged was, that after eviction from part, the landlord cannot recover upon the original contract: if so, what is said about the quantum meruit was extrajudicial. And that it was so, seems the clearer from the case cited in support of the judgement; which is Dalston v. Reeve, 1 Ld. Raym. 77. where in covenant upon indenture for nonpayment of rent, the defendant pleaded eviction; the plaintiff demurred ; and judgement was given for the defendant because it is rent, and the eviction is a suspension of it, and therefore a good plea. Now, I consider these cases as rather confirming, than going to overrule or change, the doctrine, that an eviction of part of the rented premises by the landlord, is a suspension of the whole rent: In the first, lord Ellenborough expressly says, that “ an eviction from part of the demised premises, is a complete answer to the action.” In the other, Mr. justice Dallas says, “ that after eviction from part, the landlord cannot recover upon the original contract.” In the case before us, the suit was brought upon the original, contract; the plaintiff demurred to the defendant’s evidence; that evidence shews an eviction of part of the premises, by the landlord; and the question of law raised by this demurrer is, whether, in law, this evidence supports *489 the defendant’s plea of non assumpsit ? or in lord Ellenhorough’s language, whether “ eviction of part is a complete answer to the action ?” If indeed, these cases could be considered as meant to change the old and well established rule, I should reject their authority: they are, at best, but nisi prius decisions of a single judge; and I should say that the old rule is wise, humane and just, and the new one the contrary. How can the landlord complain of the law which says to him, “be just, and abide by your contract; if you take from your tenant a part of the premises, you shall receive no rent ?” But look at the other side: a man rents a tract of land; it is of a size which suits his capital and his views; he would not rent a part of it; it would be too small; but after he has settled upon it, and made all his arrangements for a crop, his landlord comes and takes forcible possession of his best fields : he must either at an inclement or inconvenient season, turn himself out of house and home; or if he remains, you make him pay to this oppressive landlord, a portion of the rent. It is not consistent either with the policy or humanity of the law, thus to arm the strong against the weak.
But how can we, in the existing posture of the casé, come at the question, whether the rent should be apportioned ? The jury has found a verdict for the whole rent, the 70 dollars. No objection was made to this by the defendant; no motion was made to the court, to set aside the verdict for excessive damages: on the contrary, the parties put themselves intirely upon the law of the case. The plaintiff demurs to the defendant’s evidence, saying it is not sufficient in law, to maintain the issue on his part; the defendant says that the evidence is sufficient. Thus an issue in law is made up, and this is the sole point to be tried by the court. This, which is so clear in itself, has also the sanction of this court. In Humphreys v. West, 3 Rand. 518. judge Coalter said, “ The court is of opinion, that the only question for their consideration, on a demurrer to evidence, is, whether the evidence supports the issue or not. After the demurrer is *490 joined, the jury may either be discharged, and (if the judgement be that the evidence does support the issue) a writ of inquiry is awarded ; or the jury then impanneled, may go on to assess conditional damages. But, in either case, the question is with the jury, not the court, as to the question of damages ; subject, as in all other cases to' the superintending control of the court, to grant a new trial in case the damages are excessive. That however rests with the court before whom the trial was had; and that too, upon a motion to that court for a new trial; there being no case in which that court is bound, eso mero motu, and without motion, to grant a new trial, and subject the defendant, without his consent, to greater damages. The appellate court cannot grant such new trial; for that, would be to reverse the judgement of an inferiour court, on a motion for a new trial here, which was not made to that court, and of course, on a matter in which that court committed no error.” This was the unanimous judgement of a full court, and has never since (that I have heard of) been questioned. I am for affirming the judgement.
Cabell and Brooke, J. concurred.
Tucker, P. After having very much revolved this case, with which I have been perplexed, not only by the cases upon the subject of suspension of rent, and of use and occupation, but by the extremely awkward and unsatisfactory manner in which the demurrer is presented, I am inclined to think, that the whole question depends upon the fact, whether there was, in this case, any regular demise or lease? If there was a regular demise or lease, then it seems clear from the wole current of authorities, from the time of Roll to the passing of the statute of 11 Geo. 2. ch. 19. that general indebitatus assumpsit for use and occupation will not lie, unless upon a collateral promise, or where, as it is said, the promise is to pay a sum in gross. Wherever there was a regular demise, the landlord was supposed to have his re *491 medy upon the contract itself. Thus, we are told in 1 Roll’s Abr. 7. 8. that if a man leases for years reserving rent, assumpsit will not lie, either during the lease or after, because it savours of the realty. And this is perfectly consonant with general principles. For, in no case, can a man who has made an express contract abandon that, and recover under a contract implied or raised by law. He may have contracted for terms less favorable than the law would imply, and he must be bound by such contract. He cannot be permitted to abandon it, and recover more than he stipulated for, or on other terms than those stipulated.
Questions, however, often arose, in these cases, whether the engagement was to pay rent, or was a promise to pay a sum in gross ? Whether an express promise to pay the rent reserved, was or was not collateral, or upon a new consideration? and whether there was a regular demise or not? For, if there was an express promise to pay a sum in gross, the action was maintainable; as where the declaration set forth, that in consideration that the plaintiff promised to make a lease for two years and to repair during the term, the defendant promised to pay twenty shillings per quarter ; this was held to be a promise to pay a sum in gross, and therefore recoverable in assumpsit; 1 Roll’s Abr. 7 O. case 3. And where there was any new consideration (such as forbearance to sue) and a promise to pay after the rent became due, the action was held to be maintainable; 1 Brownl. 14. So also where there was no regular demise, and the defendant nevertheless entered and enjoyed, by permission of the owner, the landlord might maintain an action for use and occupation; since, otherwise, he would have been without remedy. But where there was no such ground of exception to the general rule, that rule prevailed, that in case of an actual lease assumpsit would not lie. Green v. Harrington, 1 Brownl. 14. Mantel v. Brett, Hob. 397.
In consequence of these principles, nothing was more frequent at common law, in actions for use and occupation, than the nonsuit of the plaintiff by evidence on the trial of *492 a regular demise. It was to remedy this inconvenience, that the stat. 11 Geo. 2. ch. 19. was enacted. See 4 Hen. & Munf. 168. The statute provides, that where the demise is not by deed, the landlord may bring the action for use and occupation, and if on the trial any parol demise or agreement (not being by deed) whereon rent is reserved, shall appear in evidence, the plaintiff shall not therefore be nonsuited, but may use it as evidence of the quantum of damages. This statute never was in force with us, nor have we any similar provision. We stand, therefore, upon the old common law, which permits a recovery in indebitatus assumpsit for use and occupation, either upon an express or implied promise where there has been no regular demise, but denies it where there has been such demise, unless in cases of collateral promises, or promises upon new consideration, or a promise to pay a sum in gross. That the action is sustainable upon an express or implied promise under such circumstances, is clearly established by the case of Eppes v. Cole, 4 Hen. & Munf. 161. and by the cases there cited. The apparent collision between some of these cases and of others to be found in the books, may be explained by an attention to the distinctions above mentioned. See Chambers’s Landlord and Tenant 687.
In this view, then, it is essential to determine, whether there was or was not a regular demise in this case; and from a careful examination of the demurrer, I am of opinion there was not. [Here, the judge entered into an examination of the evidence set out in the demurrer, to shew the justness of this conclusion.] If there was no regular demise, then the action for use and occupation will lie; and, in that action, the question of eviction does not arise, but the plaintiff is entitled to recover for that part actually enjoyed, but for that part only. Tomlinson v. Day, 3 Brod. & Bing. 680. 6 Eng. C. L. R. 315. Now, it seems, that, in this case, the promise to pay the 70 dollars was for the whole land including the meadow; and as the meadow was not enjoyed, the rent should be apportioned. Or, (to con *493 sider it in another light) the tenant having enjoyed the land, without the meadow, should only be compelled to pay for the part enjoyed.
The verdict, however, has found the whole 70 dollars, subject to the opinion of the court on the demurrer. Shall the plaintiff then recover the whole sum, because the court is of opinion the evidence does support an action ? By no means. I am of opinion, that the evidence maintains the action, indeed, but only for part of the sum. The verdict, therefore, has not so found the damages as to enable the court to pronounce judgement. Upon the case presented, the jury ought either to have been discharged without inquiring of damages, or they ought to have found the damages with a double aspect; namely, so much if the plaintiff was entitled to the whole rent, and so much if he was not entitled to rent for the meadow. This not being done, the verdict, I think, should be set aside, and a writ of inquiry awarded. But the other judges being of opinion that there is no error in the judgement, it must be affirmed.